IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

TIFFANY GRIGGS                                                          PLAINTIFF


        v.                         CIVIL NO.        10-3011


MISHAEL J. ASTRUE, Commissioner
of Social Security Administration                           DEFENDANT

**MEMORANDUM OPINION**


**I.      Procedural Background:**

        Plaintiff filed her DIB and SSI applications on April 18, 2007, claiming disability since

September 1, 2006 (Tr. 95-104, 124-132). The state Disability Determination Services denied

Plaintiff's applications initially and on reconsideration (Tr. 59-65, 67-70). Pursuant to Plaintiff's

request, ALJ conducted a hearing on July 2, 2008, where Plaintiff, and a lay witness, and a

vocational expert appeared and testified (Tr. 6-43).

        On October 3, 2008, the ALJ issued an unfavorable decision (Tr. 11-21). In her decision,

the ALJ found that Plaintiff had a severe impairment due to recurrent kidney stones (Tr. 53 -

Finding 3). However, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that met a listing for presumptive disability (Tr. 53 - Finding 4). The ALJ also

found that Plaintiff's subjective allegations were not entirely credible (Tr. 54). Relying on

vocational expert testimony, the ALJ found that other work existed in significant numbers in the

national economy that Plaintiff can perform (Tr. 57 - Finding 10). As a result, the ALJ found

that Plaintiff was not under a disability at any time from the date of her decision (Tr. 58 -

Finding 11). The ALJ's decision became the final decision of the Commissioner when the

Appeals Council denied Plaintiff's request for review (Tr. 1-3).

II.      **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

Substantial evidence is less than a preponderance, but enough that a reasonable mind would find

it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining

the record to find substantial evidence in support of the ALJ's decision; we also consider

evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial

evidence in the record to support the Commissioner's decision, the court may not reverse the

decision simply because substantial evidence exists in the record to support a contrary outcome,

or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742,

747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the

evidence, and one of those positions represents the Secretary's findings, the court must affirm the

decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden

of proving his disability by establishing a physical or mental disability that has lasted at least one

year and that prevents him from engaging in any substantial gainful activity. *Pearsall v.*

*Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A).

The Act defines "physical or mental impairment" as "an impairment that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)©. A plaintiff

-2-

must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

  The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## III. Applicable Facts

  On February 27, 2005 the Plaintiff was admitted to St. John's Hospital with a finding of probable 1-2 cm calcification near the right ureteral vesicle junction (T. 458).

  On March 9, 2005 it appears that the stone passed without medical intervention (T. 404).

  On December 20, 2005 the Plaintiff saw Dr. Armstrong complaining of right-sided pain with history of nephrolithiasis (kidney stones).  She had an IVP which was normal and was prescribed Cipro 250 mg x 7days (T. 361-362).

  On May 2, 2006 the Plaintiff was admitted to St. John's Hospital with pain associated with kidney stone. The Creatinine level was .08.(T. 205-206).

On May 3, 2006 Plaintiff was seen by Dr. Armstrong who noted that she was in "obvious colicky pain" and that he was going have Dr. Ferguson evaluate her (T. 363). The Plaintiff was admitted to North Arkansas Regional Medical Center, she was seen by Dr. Chitsey and Dr. Ferguson. She was diagnosed with Nephrolithiasis and Dr. Ferguson recommended stent placement with plans for eventual lithotripsy. The Plaintiff elected to go home with the plan that she would return to the ER if she had intolerable pain. (T. 231-232).

On May 5, 2006 the Plaintiff returned to North Arkansas Regional Medical Center complaining of pain. (T. 222). She was seen by Dr. Armstrong but ultimately referred to Dr. Ferguson. (T. 223). On May 5, 2006 the Plaintiff was admitted to St. Mary's Hospital and seen by Dr. Aguilar-Guzman who determined that the Plaintiff had a 6-7 mm stone at the left ureteropelvic junction. (T. 339-341)

On May 6, 2006 Dr. Aguilar-Guzman performed a cystoscopy, retrograde ureterogram and placement of double-J stents on the Plaintiff. (T. 342).

On May 10, 2006 Dr. Aguilar-Guzman performed a Extracorporeal shockwave lithotripsy, cystoscopy, and stent removal. (T. 335)

On October 19, 2006 the Plaintiff was seen at St. John's clinic for a tender right flank and signs of a urinary tract infection. (T. 401). The Plaintiff was admitted to St. Mary's Hospital she was started on Levaquin. Her Creatinine was 0.7. (T. 319-320). Dr. Bumpers diagnosed her with a right renal stone of 10 mm with associated pain.

On October 20, 2006 Dr. Bumpers performed a stent placement in anticipation of treating her stone but she did not tolerate the stent placement and he ultimately had to perform a flexible ureteroscopy and laser lithotripsy of her stone. The Plaintiff was discharged on October 26,

-4-

2006. (T. 318).

On November 6, 2007 the Plaintiff was seen by Dr. Bumpers who noted that she was feeling fine and he recommended further urine and serum studies and good hydration. (T. 221).

On November 7, 2007 the Plaintiff was admitted to St. Mary's Hospital with right lower quadrant pain with associated dysuria, frequency, and urgency. Dr. Bumpers suspected stone fragments in her distal ureter. The Plaintiff passed the stone fragments and was discharged on November 8, 2006. (T. 305-307)

On December 13, 2006 the Plaintiff was admitted to St. Mary's hospital. Dr. Bumpers noted a 6-mm stone in her upper left ureter and that this was a new stone. Dr. Bumpers noted that it appeared that "her stone burden has increase in the right kidney." (T. 284).

On December 14, 2006 Dr. Bumpers performed a left ureteroscopy, laser lithotripsy, and stent placement. The Plaintiff was placed on Vicodin ES 1 to 2 ever 4 to 6 hours PRN, Prednisone 10 mgs daily for 1 week, Cipro 500 mgs b.i.d. for 5 days, Ditropan XL 15 mg daily, Vallum 5 mgs every 6 hours. The Plaintiff was discharged on December 15, 2006. (T. 283).

On December 16, 2006 Plaintiff was readmitted to St. Mary's because of pain associated with the surgery.(T. 276). Pain was managed with IV Dilaudid and she was placed on Urocit 20 mEq every 8 hours. Plaintiff was discharged on December 22, 2006. (T. 274).

On December 26, 2006 the Plaintiff was seen by Dr. Bumpers for pain and nausea. Her IVP revealed extravasation.

On December 27, 2006 Plaintiff was seen by Dr. Bumpers. Her IVP showed significant improvement. On December 29, 2006 a note showed that the Plaintiff's mother stated she was doing much better. (T. 219).

On January 3, 2007 Plaintiff was seen by Dr. Bumpers who removed the stent.  Plaintiff stated she was feeling better.  The Urocit prescription was reduced to 1 tablet 3 times a day. A note 01/05/06 in the records states that the Plaintiff is feeling better and on 01/09/06 that the Plaintiff went to work "last night" but still hurting. (T. 218).

On January 30, 2007 Plaintiff saw Dr. Bumpers and noted that she was still having intermittent right and let flank pain with nausea and vomiting which would occur two to three times per week.  She had stopped taking the Urocit because it was making her ill.  Her medication was switched to Polycitra K crystals.  (T. 217).

On February 14, 2007 Plaintiff was seen by Dr. Bumpers.  The IVP exam disclosed a 10 mm stone in the upper right ureter with obstruction. (T. 267).  It was noted that Plaintiff did not tolerate the Polycitra K crystals and her prescription was changed to sodium bicarb 15 mEq twice a day. (T. 216).  Dr. Bumpers noted that management of the Plaintiff was "complicated by the fact that she has extremely poor tolerance of ureteral stents which are integral in treatment and management of kidney stones." (T. 266)

On March 1, 2007 Plaintiff was admitted to St. Mary's Hospital where Dr. Bumpers performed a dilation of the left ureteral stricture with placement of a stent and a right extracorporeal shock wave lithotripsy. (T. 264-265).

On March 6, 2007 Dr. Bumpers removed the stent.  (T. 213).

On April 4, 2007 Plaintiff saw Dr. Bumpers who note that her "left upper ureteral stricture is still present essentially after UPJ."  He reviewed surgical options and also noted that she was tolerating the sodium bicarb, which was alkalinizing her urine appropriately. (T. 214).

On April 17, 2007 that Plaintiff was seen by Dr. Bumpers who noted the stricture in her

upper left ureter and recommended a cystoscopy and ureteral catheter. (T. 251).

On April 24, 2007 Dr. Bumpers performed a ureteropyelostomy to repair the stricture in her upper left ureter.  He also removed 18 small stones ranging in size from 3 to 5 mm. (T. 250).

May 2, 2007 the Plaintiff filed for DIB and SSI contending that the onset date was September 1, 2006. (T. 95-104)

On May 15, 2007 Plaintiff was seen by Dr. Bumpers who noted that she was doing well. (T. 212).

On July 5, 2007 an RFC assessment was performed by Jim Takach who appears to have reviewed the medical records up to May 2007.  He stated that he would "expect function w/o a residual severe physical impairment after a brief recovery period."  (T. 345).

On July 17, 2007 Plaintiff was seen by Dr. Bumpers who noted that she was recovering well from her surgery but that she did have 1-2  new stone formation (10 mm x 6 mm)  in the lower pole of her left kidney despite hydration and alkalization. (T. 348).

On September 13, 2007 Bill Payne confirmed the opinion of Jim Takach. (T. 351).

On September 20, 2007 Plaintiff saw Dr. Bumpers for left sided back pain.  A urine culture was obtained which showed an infection. She was placed on Cipro. (T. 392) (T. 454).

On September 27, 2007 Dr. Bumpers saw the Plaintiff and confirmed that she had three small stones in the left kidney.  Plaintiff stated that she had passed one stone since the last visit. (T. 391).

On November 3, 2007 Plaintiff was admitted to St. Mary's Hospital with flank pain.  A CT scan (T. 373) and xray (T. 372) showed a large stone at the UPJ. Dr. Bumpers recommended a cystoscopy and stent placement in anticipation of extracorporal shock wave lithotripsy. (T.

378). On November 7, 2007 a cystoscopy with right ureteral stent placement and stone manipulation and right extracorporeal shock wave lithotripsy was performed. (T. 375).  On November 9, 2007 the Plaintiff was discharged.  Dr. Bumpers stated that his "concern with the increased number of stones that she has is whether these are recurrent cysteine stones or whether possibly she is forming a different type of stone now." (T. 370) (T. 380).

On November 28, 2007 Plaintiff was seen at the Rogers Diagnostic Clinic and it was noted that she has passed additional fragments.  Dr. Bumpers' plan was to put her on Thiola but he was not sure she could afford that unless she had some kind of assistance. (T. 420).

On December 14, 2007 Plaintiff was seen by Dr. Bumpers for left flank pain, nausea and vomiting.   An IVP showed a 10 mm stone at the left UPJ and two similar size stones in the lower pole of the left kidney.  (T. 451)(T. 383).

On December 27, 2007 Plaintiff was seen by Dr. Bumpers who removed the stent and noted that the stone that had been causing her obstruction fragmented well but the two stones in the lower pole of her left kidney had not changed. (T. 450).

On January 3, 2008 Plaintiff saw Dr. Bumpers at St. Mary's Hospital who performed a cystoscopy with left retrograde ureterogram and left ureteral stent placement. (T. 434)

On January 7, 2008 Plaintiff presented with a large greater than 10 mm cystine stone blocking her left UPJ and a stent was placed. (T. 431).

On January 9, 2008 Dr. Bumpers performed a left extracorporeal shock wave lithotripsy. (T. 441).

On February 27, 2008 Dr. Bumpers provided a Medical Source Statement.  Dr. Bumpers noted that his prognosis was a "chronic condition that has not responded well to treatment."  He

also noted the plaintiff would have difficulty with attention and concentration when symptoms are present and that you could expect her to be absent from work more than four days per month as a result of her condition.

On March 21, 2008 the Plaintiff was seen by Dr. Bumpers at Mercy Medical Center because she had a distal right ureteral calculus which failed to pass.  The Plaintiff also noted that she had to stop the Thiola due to visual and hearing side effects. (T. 422).

On March 26, 2008 Dr. Bumpers performed a right ureleroscopy but it was determined that the Plaintiff had passed the stone prior to surgery. (T. 425).

**IV.   <u>Discussion</u>**:

 In her decision, the ALJ found that Plaintiff had a severe impairment due to recurrent kidney stones (Tr. 53). However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met a listing for presumptive disability (T. 53)

Social security regulations provide that where a claimant's impairments do not meet or equal a listed impairment, the Commissioner will then consider the claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record.  *Id.*  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual

-9-

functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).

Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical

evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,*

353 F.3d 642, 646 (8th Cir. 2003).

The ALJ stated that she "discounted the opinion of Dr. Bumpers (plaintiff's treating

physician) that the claimant is unable to perform even simple work task and finds his statements

generalized and his assessment unsupported by the medical evidence of record with regard to the

claimant's limitations (Exhibit 10F)" (T. 56).  Exhibit 10F is located at page 389 of the

transcript.  This is a Medical Source Statement which Dr. Bumpers completed on February 27,

2008. Nowhere in the statement does Dr. Bumpers state that the "claimant is unable to perform

even simple work task".  Dr. Bumpers was responding to question number 5 on the form which

states:

How often during a typical workday is your patient's experience of pain or other

symptoms severe enough to interfere with attention and concentration need to perform even

simple work tasks?

Dr. Bumpers checked the box frequently and constantly and then entered a handwritten

note which said "when symptoms are ????? flaring".  It is clear that he was indicating that the

Plaintiff only had this difficulty when she was in the midst of an attack.  (T. 389).

Dr. Bumpers also  indicated that the Plaintiff would need to take unscheduled breaks

during an 8 hour work day but when asked how often he stated that it would be "hard to predict.

She might go extended periods (weeks or months) with no problem and then experience frequent

symptoms." (Id.)

-10-

Dr. Bumpers was also asked to predict how many days per month the Plaintiff was likely to be absent from work as a result of her impairment.  Again Dr. Bumpers qualified by stating that it was "difficult to predict from month to month" but then indicated more than 4 days per month. (Id.).

The ALJ further tried to discount Dr. Bumpers assessment because he "tries to avoid hospitalization and prescription medication" and has "advised the claimant that good hydration reduces the risk of kidney stones."

This statement totally ignores the medical record.   In his Prognosis Dr. Bumpers stated that the Plaintiff had a "chronic condition that has not responded well to treatment."  Surgery was performed on the Plaintiff on May 6, 2006 (T. 324), May 10, 2006 (T. 335), October 20, 2006 (T. 318), December 14, 2006 (T. 283), March 1, 2007 (T.  264-265), April 24, 2007 (T. 250), November 7, 2007 (T. 375), January 3, 2008 (T. 431), January 9, 2008 (T. 441) and March 26, 2008 (T. 425).

The record also contradicts the ALJ's assessment that Dr. Bumpers did not try to treat the Plaintiff's condition with medication. On December 14, 2006 Dr. Bumpers performed a left ureteroscopy, laser lithotripsy, and stent placement.  The Plaintiff was placed on Vicodin ES 1 to 2 ever 4 to 6 hours PRN, Prednisone 10 mgs daily for 1 week, Cipro 500 mgs b.i.d. for 5 days, Ditropan XL 15 mg daily, Vallum 5 mgs every 6 hours. On December 16, 2006 Plaintiff was readmitted to St. Mary's because of pain associated with the surgery.(T. 276).  Pain was managed with IV Dilaudid and she was placed on Urocit 20 mEq every 8 hours. Plaintiff was discharged on December 22, 2006. (T. 274). On January 3, 2007 he reduced her Urocit to 1 tablet 3 times per day. (T. 218).  On January 30, 2007 he switched her medication to Polycitra K crystals

because she was having difficulty taking the Urocit. (T. 217).  On February 14, 2007 he switched her prescription to sodium bicarb 15 mEq twice a day because she was having difficulty with the Polycitra. (T. 216). On November 28, 2007 Plaintiff was seen at the Rogers Diagnostic Clinic and it was noted that she has passed additional fragments.  Dr. Bumpers' plan was to put her on Thiola but he was not sure she could afford that unless she had some kind of assistance. (T. 420). The record also notes that the Plaintiff was hydrating as ordered by her doctor and that new stones continued to form. (T. 348).

A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). These opinions are not automatically controlling, however, because the record must be evaluated as a whole. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir.2005). We will uphold an ALJ's decision to discount or even disregard the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. at 920-21 (internal quotations omitted).

The only medical evidence in the record consist of a Request for Medical Advice (T. 346) issued June 28, 2007 and a Case Analysis done by Dr. Jim Takach.  Dr. Takach's analysis states that the Plaintiff is a "21 yo with a hx of recurrent cystine stone requiring a series of cystoscopic stone removals and lithotripsies and 5/07 ureteropyelostomy to repair a UPJ stricture– 6/07 removal of retained stent w/o complications – current creatine nl(1.0) – from the MER – expect function w/o a residual severe physical impairment after a brief recovery period – 9/07 (E3-NS)"

-12-

(T. 345).

An additional Request for Medical Advice was issued on September 10, 2007 (T. 352) and Dr. Bill Payne concurred in Dr. Takach assessment.  Dr. Payne's case analysis stated "I have reviewed all the evidence in the file, and the assessment of 7/5/2007 is affirmed." (T. 351).

We have stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. See, e.g., *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement). This is especially true when the consultative physician is the only examining doctor to contradict the treating physician. Id.; *See also Cox v. Barnhart,*  345 F.3d 606, 610 (C.A.8 (Ark.),2003)

The court finds that remand is necessary to allow the ALJ to develop the record further regarding plaintiff's RFC.  *See* 20 C.F.R. §404.944; *Brissette v. Heckler*, 730 F.2d 548 (8th Cir. 1984) (holding that the ALJ is under the affirmative duty to fully and fairly develop the record).

**V.     Conclusion:**

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated this 4th day of February 2011.


*/s/ J. Marschewski*
James R. Marschewski
Chief United States Magistrate Judge

-13-